## ISRAEL et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1925.)

No. 4090.

**1. Conspiracy ⬚28—Persons not bankrupts may be guilty of conspiracy to conceal goods from trustee in bankruptcy.**

Persons who are not bankrupts may be guilty of conspiracy, under Penal Code, § 37 (Comp. St. § 10201), to conceal from trustee in bankruptcy goods belonging to bankrupt estate, under Bankruptcy Act, § 29 (Comp. St. § 9613).

**2. Conspiracy ⬚28—One may be guilty of conspiracy, though incapable of committing the crime itself.**

A person may be guilty of conspiracy to commit a crime, although himself incapable of committing the substantive offense.

**3. Conspiracy ⬚28—Persons may be guilty of conspiracy to conceal goods from trustee, though overt acts committed four months before bankruptcy.**

Persons may be guilty of conspiracy to conceal from trustee in bankruptcy goods belonging to the bankrupt estate, though the overt acts were committed more than four months before bankruptcy.

**4. Conspiracy ⬚43—Evidence held sufficient for submission of case to jury in prosecution for conspiracy to conceal goods from trustee in bankruptcy.**

In prosecution for conspiracy, under Penal Code, § 37 (Comp. St. § 10201), to conceal from trustee in bankruptcy goods belonging to bankrupt estate, evidence *held* sufficient for submission of case to jury.

**5. Conspiracy ⬚47—Existence of conspiracy may be shown by inference.**

The existence of a conspiracy may be shown by inference.

**6. Criminal law ⬚1159(1)—Circuit Court of Appeals cannot weigh evidence or pass on credibility of witnesses.**

The Circuit Court of Appeals cannot weigh the evidence or pass on the credibility of witnesses.

**7. Criminal law ⬚1170(1)—Court's failure on own motion to direct admission of evidence, previously excluded because not shown material, held not prejudicial error.**

In prosecution for conspiracy, under Penal Code, § 37 (Comp. St. § 10201), to conceal goods from trustee in bankruptcy, court's failure on its own motion to direct admission of evidence as to replevin suit, previously excluded because not shown to be material, *held* not prejudicial error, especially in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246).

**8. Witnesses ⬚52(7)—Wife of one conspirator incompetent witness.**

In prosecution for conspiracy, testimony of wife of one defendant, offered as witness for his codefendants, was incompetent, where such testimony would inure to husband's benefit.

**9. Criminal law ⬚1167(1)—Variance as to street address of bankrupt's business, in prosecution for conspiracy to conceal goods from bankrupt's trustee, held immaterial.**

In prosecution for conspiracy to conceal goods from trustee in bankruptcy, variance as to address of bankrupt's place of business, described as "No. 113 East Third street" in information, and shown by evidence to be "No. 114 East Third street," *held* immaterial.

**10. Criminal law ⬚865(1)—Court's remarks to jury as to desirability of agreement held not ground for reversal.**

Court's remarks, in asking jury to return and resume their deliberations the following morning, that court did not favor disagreements, that it was desirable that jury arrive at some verdict, that if that was impossible the jury must be discharged and the matter retried, but that, if it was possible to arrive at a verdict, it was highly desirable, *held* not ground for reversal.

In Error to the District Court of the United States for the Southern District of Ohio; Smith Hickenlooper, Judge.

Charles A. Israel and Morris Sussman were convicted of conspiracy to conceal goods belonging to bankrupt's estate, from trustee, and they bring error. Affirmed.

Allen C. Roudebush, of Cincinnati, Ohio (Edward M. Hurley, of Cincinnati, Ohio, on the brief), for plaintiffs in error.

Harry A. Abrams, Asst. U. S. Atty., of Cincinnati, Ohio (Benson W. Hough, U. S. Atty., of Columbus, Ohio, and Haveth E. Mau, Asst. U. S. Atty., of Cincinnati, Ohio, on the brief), for the United States.

Before DENISON, MACK, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error Israel was in the business, at Middletown, Ohio, of retailing ladies' and children's clothing and accessories. Petition in bankruptcy was filed against him March 15, 1923; adjudication was made April 23, and trustee appointed May 11, 1923. Plaintiff in error Sussman was in business at Newport, Ky., from November 1, 1922, to February 15, 1923. June 1, 1923, Israel, Sussman and one Schwartz were indicted upon a charge of conspiracy under section 37 of the Penal Code (Comp. St. § 10201) to violate section 29 of the Bankruptcy Act (Comp. St. § 9613)—the specific charge being that the three defendants conspired among themselves and with other persons to the grand jurors unknown, "in contemplation and in anticipation of the involuntary

bankruptcy of said defendant, Charles A. Israel, to secrete and conceal from the trustee" of Israel's bankruptcy estate, to be thereafter appointed, certain property which would then and there belong to said bankruptcy estate, "to wit, ladies' hosiery, gloves, coats, fur coats, dresses, cloaks, silk underwear, and the money for which said merchandise might thereafter be sold or exchanged," etc., then and there Israel's property, and charging Israel's later bankruptcy; also that the defendants so conspiring "continued to secrete and conceal," while Israel was a bankrupt, from the duly appointed trustee of the assets of the bankruptcy estate, certain property then and there belonging to said estate by general description. The overt acts set out alleged, among other things, the fraudulent removal by Israel and Sussman from a given address at Middletown, Ohio, of trunks of merchandise; other such removals by Israel and Sussman; others by Israel and Schwartz; others of receipt by Sussman, at Newport, Ky., of certain trunks and trucks of merchandise; and still others the entering upon Israel's books of account of fictitious entries, purporting to represent sales of merchandise—all laid as of dates preceding the bankruptcy. Demurrers to and motion to quash the indictment were overruled, as was a motion to direct verdict for defendants made at the close of the testimony. Schwartz was acquitted.

[1, 2] 1. *Sufficiency of Indictment.* It is argued here that Sussman and Schwartz, not being bankrupts, could not violate section 29 of the Bankruptcy Act, and therefore could not be indicted for conspiring to violate that section. We think this criticism without merit. It is well settled that a person may be guilty of conspiring to commit, although himself incapable of committing, the substantive offense. United States v. Holte, 236 U. S. 140, 145, 35 S. Ct. 271, 59 L. Ed. 504, L. R. A. 1915D, 281; United States v. Rabinowich, 238 U. S. 78, 86, 35 S. Ct. 682, 59 L. Ed. 1211; Jollit v. United States (C. C. A. 5) 285 F. 209, 213 et seq. (certiorari denied Saliba v. United States, 261 U. S. 624, 43 S. Ct. 519, 67 L. Ed. 832).

[3] We see no merit in the suggested distinction between the participation by Sussman and Schwartz with the bankrupt in a conspiracy to conceal, and one by defendants other than the bankrupt to cause the latter to conceal. Neither do we see any pertinency in the fact that certain of the overt acts are charged to have been committed more than four months before the bankruptcy.

[4] 2. The motion to instruct verdict for defendants was properly overruled. There was competent and substantial testimony of circumstances reasonably tending to show frequent secret removals of goods in trunks, and in substantial amounts, from Israel's store in Middletown, Ohio, to that of Sussman in Newport, Ky.; of the finding in the latter's store of goods which had been bought by and shipped to the former; of the failure of Israel's books to show any sales to Sussman; of the return from time to time of empty trunks from Sussman to Israel; of the making of large numbers of fictitious entries of sales of goods, many in substantial amounts, as well as of large apparent discrepancies between the amount of goods purchased by Israel (and the amount which should normally have been on hand) and the amount found by the trustee in bankruptcy; and testimony tending to show that such discrepancies were not otherwise sufficiently accounted for, as well as testimony of facts tending to show familiar relations between Israel and Sussman, including apparent financial interest by the former in the latter's Newport business. Such acts were competent evidence tending to show an intention to conceal from the trustee. Meyer v. United States (C. C. A. 5) 220 F. 822, 136 C. C. A. 432; Glass v. United States (C. C. A. 3) 231 F. 65, 145 C. C. A. 253. The alleged conspiracy would naturally look to the future. Cf. Williamson v. United States, 207 U. S. 425, 446 et seq., 28 S. Ct. 163, 52 L. Ed. 278.

[5, 6] That the existence of a conspiracy may be shown by inference, see Davidson v. United States (C. C. A. 6) 274 F. 285, 287. We cannot weigh the evidence or pass upon the credibility of witnesses. Burton v. United States, 202 U. S. 344, 373, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392; Kelly v. United States (C. C. A. 6) 258 F. 392, 406, 169 C. C. A. 408.

[7] 3. *Admission and Rejection of Evidence.* Numerous errors are assigned relating to this subject. We find it necessary to discuss but two:

(a) As already stated, Sussman opened his store at Newport, Ky., November 1, 1922, and continued it until February 15, 1923, when he sold out. On the trial an attorney living at Muncie, Ind., testified to his employment by Sussman, in September, 1922, to replevin some goods from a named person; that he saw in the latter's store the merchandise, consisting of women's and

children's wearing apparel, etc., which the sheriff seized under the writ from the store last mentioned, placed in a trunk and held by the sheriff until September 23d, when the goods were delivered to the witness, who ordered them shipped to a named dealer in Cincinnati, Ohio. On motion of the government, the court instructed the jury to disregard all evidence of the replevin suit in Muncie. The court did not exclude evidence of the shipment of the goods, but only of the replevin suit itself, which at that time was not shown to be material. It was not made material, except by Sussman's later testimony, and the offer does not seem to have been renewed. To say the least, we think the evidence of the replevin suit not so material, nor its exclusion so prejudicial, that reversible error can be predicated upon the court's failure, upon its own motion, to direct its admission, especially in view of section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246).

[8] (b) The testimony of the wife of plaintiff in error Israel was rejected as incompetent. It is urged that she was called as a witness, not for her husband, but for his codefendants. Whether or not the record should be construed as indicating that counsel making the offer represented all three defendants, we think the rejection proper. This court has held that the wife of one of several defendants is not a competent witness for the defense in a criminal trial. Haddad v. United States (C. C. A.) 294 F. 536, 537. We need not consider whether the statute should be so construed when the defendant offering the witness is being tried separately from her husband, nor where, even on joint trial, it is evident that the wife's testimony cannot affect the husband's defense. In this case the contrary distinctly appears. Not only were defendants being jointly tried, but counsel's avowal, made in connection with the offer of the wife as a witness, was that she would testify "that she assisted her husband in the store; that she assisted him with the charge accounts; that she acted as saleslady from time to time to Max Sussman, who paid cash for them; that she had a quarrel with defendant Schwartz, who worked in the store; and that as a result of this quarrel Schwartz intended to quit and checked his trunk with personal belongings to Evansville, Ind." In this prosecution for conspiracy, this proffered testimony, in connection with the other evidence in the case, would necessarily inure directly to the husband's benefit equally with that of the other defendants, as tending to refute the idea of any unlawful conspiracy whatever between any two of the defendants.

[9] 4. *Variance between Indictment and Proofs.* In the statement of the overt acts Israel's premises were described as "No. 113 East Third street." There was evidence that the location was No. 114 East Third street. The court rightly held the variance immaterial. The particular number was not per se material by statute or otherwise, nor under the evidence could the variance have been material. It did not appear that Israel had more than one store in Middletown. The statement in the indictment was evidently clerical error. Defendants could not reasonably have been misled or prejudiced thereby. Matthews v. United States, 161 U. S. 500, 16 S. Ct. 640, 40 L. Ed. 786; West v. United States (C. C. A. 6) 258 F. 413, 414 et seq., 169 C. C. A. 429; Rothlisberger v. United States (C. C. A. 6) 289 F. 72, 73; Judicial Code, § 269. And see, by analogy, Ledbetter v. United States, 170 U. S. 606, 612, 18 S. Ct. 774, 42 L. Ed. 1162.

[10] 5. *Alleged Coercion of Jury.* The jury retired at 4:25 p. m. to consider its verdict. At 5:12 it returned for further instructions which were given. It recessed for dinner from 6:27 to 7:30. At 10:28 p. m., when it had deliberated five hours in all, it announced its inability to agree. The court thereupon expressed its regret from the point of view of the jury, as well as of all concerned, for the reason that the court did not favor disagreements, although it never desired to coerce any juror to decide against his best judgment and his conscience in any matter pending there; that he felt constrained, however, in a case which had taken so long to try, and in which there had been so many witnesses, to ask the jury to return the next morning to resume their deliberations, in the hope that thinking the case over during the night might be able to reconcile individual views or views of individual jurors, so that some verdict might be arrived at. In discharging the jury for the night, the customary caution not to discuss the case when all the jurors were not present was given, and the considerations before expressed, on the subject of harmonization of views, were substantially repeated. The court's remarks concluded with these words: "It is the desirable end of the process of deliberation that the jury arrive at some verdict. Of course, if that is impossible, the jury must be discharged, and the matter retried; but, if it is possible to arrive at a verdict, it is highly desirable." We think

this action well within the judicial discretion of the trial judge, as evidenced by numerous authorities. Allen v. United States, 164 U. S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528; Hyde v. United States, 225 U. S. 347, 381, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Suslak v. United States (C. C. A. 9) 213 F. 913, 919, 130 C. C. A. 391; Shea v. United States (C. C. A. 9) 260 F. 807, 808 et seq., 171 C. C. A. 533; Ammerman v. United States (C. C. A. 8) 262 F. 124, 126; Lehigh Valley Ry. Co. v. Allied Machinery Co. (C. C. A. 2) 271 F. 900, 904; Shaffman v. United States (C. C. A. 3) 289 F. 370, 375 et seq. See, also, Allis v. United States, 155 U. S. 117, 123, 15 S. Ct. 36, 39 L. Ed. 91. Indeed, no exception seems to have been taken to this action or instruction by the court, although the record shows that all the defendants and their counsel were present.

While we have not discussed each of the errors assigned, we have considered all of them, with the result that we find no reversible error, nor any reason to think plaintiffs in error have not had a fair trial.

The judgment of the District Court is affirmed.